# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TIEMOKO COULIBALY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-0189 (RC) |
| | : | | |
| v. | : | Re Document No.: | 55, 58 |
| | : | | |
| REX TILLERSON,[1] | : | | |
| *U.S. Secretary of State, et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTION TO DISMISS COUNT 5 AND DENYING PLAINTIFF'S MOTION TO RECONSIDER RULINGS ON COUNTS 18 AND 19

## I. INTRODUCTION

Plaintiff Dr. Tiemoko Coulibaly, proceeding *pro se* and *in forma pauperis*, brings this action against the United States, the Secretary of State, and eleven other current or former federal employees[2] alleging, among other things, violations of federal statutory law and the First Amendment. In a prior Memorandum Opinion, this Court dismissed or granted summary judgment to Defendants on all but four counts asserted in Dr. Coulibaly's twenty-two count third amended complaint. *See Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 104–05 (D.D.C. 2016); Sept. 30, 2016 Order (characterizing Counts 5, 6, 13, and 16 as still pending against at least one

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Rex Tillerson as a defendant.

[2] The other Defendants—James North, Deborah Duckett, Solomon Atayi, Kristina Medick, Jennifer Toole, Glenn Budd, Cynthia McKnight, Jeannette Hilleary, Martin Regan, Sarah Clement, and Daniel Madden Turbitt—are current or former employees of the U.S. Department of State, the Merit Systems Protection Board, or the Equal Employment Opportunity Commission.

defendant), ECF No. 46; *see also* Pl.'s Third Am. Compl, ("Compl."), ECF No. 28. Defendants now move the Court to dismiss Count 5 of the complaint as time barred. Defs.' Mot. Dismiss Count Five of the Third Am. Compl. ("Mot. Dismiss Count Five"), ECF No. 55. And Dr. Coulibaly requests that this Court reconsider its dismissal of Count 18 and its entry of summary judgment for Defendants on the second of two counts labelled "Count 19."[3] Pl.'s Resp. Defs.' Mot. Dismiss ("Pl.'s Resp."), ECF No. 58. The Court grants Defendants' motion to dismiss Count 5, and denies Plaintiff's motion for reconsideration.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with its prior Memorandum Opinion, which describes the facts of this case in detail. *See Coulibaly*, 213 F. Supp. 3d at 105–21. This brief summary recounts only facts and procedural history relevant to the motions currently before the Court.

### A. Factual Background

Dr. Coulibaly, an African American from the Ivory Coast, joined the Department of State's Foreign Service Institute ("FSI") as a French instructor in 1999. Compl. ¶ 19. Initially, he worked pursuant to a contract that was renewable in one-year increments. *See id.* ¶¶ 74–75; Defs.' Statement of Material Facts as to Which There is No Genuine Dispute ("Defs.' Facts") ¶¶ 1–3, ECF No. 30. He recounts "extreme anxiety and constant fear of losing his job" due to, among other things, his relative lack of job security as compared to direct-hire personnel. Compl. ¶ 109; *see also id.* ¶¶ 76, 160.

---

[3] For brevity's sake, this Opinion refers to that count as "Count 19."

According to Dr. Coulibaly, by "2007, based on [his] seniority, it was his turn to become direct-hire." *Id.* ¶ 50. He asserts that at some point on or before June 15, 2007, FSI's Associate Dean James North asked him if he would accept a direct-hire position. *See id.* ¶¶ 50–51. Dr. Coulibaly responded in the affirmative and "expecte[d] his appointment by Associate Dean James North sometime[] soon after this conversation." *Id.* ¶ 51. But, Dr. Coulibaly contends, "[w]hile [he] was waiting for his appointment," *id.* ¶ 54, other members of FSI's upper management convinced Associate Dean North not to hire Dr. Coulibaly because of his "political speech in favor of justice and democracy . . . about his country of origin." *See id.* ¶¶ 54, 57, 62.

As evidence, Dr. Coulibaly describes conversations (which apparently occurred in 2007) with Mr. Soloman Atayi—then head of the French section at FSI and Dr. Coulibaly's supervisor—and with Mr. Atayi's supervisor "Micha." *See id.* ¶¶ 54, 57–63, 66–69. In one conversation, Mr. Atayi purportedly scolded Dr. Coulibaly for giving media interviews regarding political events happening in the Ivory Coast and told Dr. Coulibaly that even though he was next in line to become a direct-hire employee, hiring him was "not a good idea" because of political articles he had written "against the Ivorian government." *Id.* ¶¶ 54, 65–66. Mr. Atayi also supposedly stated that appointing Dr. Coulibaly as a direct-hire employee "could create political problems" between the Department of State and the Ivory Coast. *Id.* ¶ 54. "[D]uring that same period," Micha allegedly told Dr. Coulibaly that "she also believed it [was] not a good idea to hire him as [a direct-hire] employee because [he] was a political asylee" and "his writing could create some political problems." *Id.* ¶ 57–59.

Dr. Coulibaly also cites as evidence a position description for a direct-hire French language teaching position, which was signed by both Associate Dean North and an FSI human resources officer and dated June 15, 2007. *See id.* ¶¶ 41–43; Position Description, Defs.' Facts Ex. F, ECF No. 30-6. At some point in 2007 or thereafter, Dr. Coulibaly's name was added to the document.[4] *See* Position Description, Defs.' Facts Ex. F, ECF No. 30-6. Dr. Coulibaly emphasizes that he did not discover the signed position description until April 22, 2013, when the Department provided it to the Merit Systems Protection Board in the course of an investigation into Dr. Coulibaly's claims of wrongdoing against members of FSI's upper management. Compl. ¶ 39; Pl.'s Resp. at 17. He asserts that by the time he was finally appointed to a direct-hire role in June 2011, he had been bypassed for "several" positions. *See* Compl. ¶ 125. "For example," he cites a direct-hire position offered to a purportedly less-experienced instructor named Frederic Hegbe (apparently in 2007) and a July 2009 position to which management "refus[ed]" to appoint Dr. Coulibaly though he was "the best candidate." *See id.* ¶¶ 55, 125.

Discord between Dr. Coulibaly and his supervisors at FSI did not subside when he became a direct-hire employee. The record reveals a conflict-filled relationship between Dr. Coulibaly and Language Training Supervisor ("LTS") Laura Fyfe, Dr. Coulibaly's first-line supervisor from June 19, 2011 until late January 2012. *See* Fyfe Aff. ¶¶ Q1, Q3–Q6, Q46, Defs.' Facts Ex. H, ECF No. 30-8. After Dr. Coulibaly's repeated internal complaints about LTS Fyfe

---

[4] Dr. Coulibaly contends that Mr. Atayi "avoided presenting" him with the position description in 2007 because he knew that Dr. Coulibaly was expecting the appointment and "would have accepted the hiring." Compl. ¶ 64. The Department disputes this account, claiming that Dr. Coulibaly's name was added to the document in 2011 when he was finally appointed to a direct-hire position. *See* Duckett Decl. ¶¶ 3–5, ECF No. 30-26.

and several requests for a new supervisor, FSI eventually moved him to LTS Phillipe Casteuble's charge in January 2012. *See* Email from Tiemoko Coulibaly (Jan. 27, 2012), EEO Investigation Report at 813–14, ECF No. 36-4. But Dr. Coulibaly's relationship with LTS Casteuble was no less strained. According to the record, on December 29, 2011, Dr. Coulibaly quarreled with LTS Casteuble at an event for FSI's French Language and Culture instructors. *See* Compl. ¶¶ 194–95; Casteuble Mem. (Jan. 24, 2012), EEO Investigation Report at 815, ECF 36-4. The parties disagree about the purpose of the meeting and the nature of Dr. Couliably's actions during the meeting. Briefly stated, Dr. Couliably contends that he was silenced when he attempted "to speak against global and systemic unlawful discrimination, retaliation and violation[s] of the No Fear Act." Compl. ¶ 195. Defendants accuse Dr. Couliably of "inappropriate conduct" and comments that "were off topic" during the meeting. Casteuble Mem. (Jan. 24, 2012), EEO Investigation Report at 815. LTS Casteuble later reprimanded Dr. Coulibaly for his conduct. *See* Email from Tiemoko Coulibaly (Jan. 27, 2012), EEO Investigation Report at 813; *see also* Casteuble Mem. (Jan. 24, 2012), EEO Investigation Report at 815, ECF No. 36-4 (reproducing LTS Casteuble's memorandum).

Beginning in mid-February 2012, Dr. Coulibaly took a leave of absence to attend to medical issues. *See* Compl. ¶ 175 ("[T]he Agency destroyed Plaintiff's health by increasing retaliation forcing him to take leave for six weeks for psychiatric treatment."). While on leave, Dr. Coulibaly contacted Equal Employment Opportunity ("EEO") manager Eloisa Done by email to explain that he had "serious health issues" as a result of "bad experiences" at work. Email from Tiemoko Coulibaly to Eloisa Done (Mar. 21, 2012), Pl.'s Resp. at 26, ECF No. 58. He expressed that "[a] change of supervisor when I return to work next week should help to

avoid further illegal retaliations which would damage my fragile health condition." *Id.*, Pl.'s Resp. at 27, ECF, No. 58. He also attached a letter from physician Dr. Willie Hamlin which noted "[i]t is not recommended for Mr. Coulibaly to return to the same hostile work environment and/or Supervisor." Letter from Willie Hamlin to Catherine Russell at 2, Pl.'s Resp. at 40, ECF No. 58. FSI later terminated Dr. Coulibaly's employment because of his "inappropriate interactions with [his] supervisors, and [his] failure to follow established procedures for requesting leave." Letter from Catherine Russell to Tiemoko Coulibaly (Apr. 2, 2012), Pl.'s Resp. Ex. 6 at 25, ECF No. 36-2.

### B. Procedural Background

The motions currently before the Court concern Counts 5, 18, and 19 of Plaintiff's third amended complaint. This Court's September 30, 2016 Opinion "construe[d] Count 5 of Dr. Coulibaly's complaint as alleging that FSI did not hire him in 2007 because of his protected First Amendment speech—namely, communicating with the media about the Ivorian government." *Coulibaly*, 213 F. Supp. 3d at 154. The Court dismissed Count 5 as asserted against the United States. *Id.* at 155. But, because the other defendants had not been properly served with the complaint, the Court denied Defendants' motion to dismiss with respect to them. *Id.* at 156. The Opinion acknowledged, however, that it "appears that the statute of limitations may have already run on these claims." *Id.* at 156 n.49.

In that same Opinion, the Court dismissed Count 18. *Id.* at 154. Count 18 claimed that the Department had "ignored" Dr. Coulibaly's request for a change of supervisor needed "to protect [his] fragile mental and physical health." Compl. ¶ 181. The Court interpreted Count 18 as

asserting a failure-to-accommodate claim under the Rehabilitation Act.[5] *See Coulibaly*, 213 F. Supp. 3d at 152. Finding that Dr. Coulibaly had failed to properly exhaust his administrative remedies—specifically, he had not brought his Rehabilitation Act claim to an EEO counselor's attention within forty-five days of the alleged discriminatory action, *see* 29 C.F.R. § 1614.105(a)(1)—the Court did not reach the merits of the claim. 213 F. Supp. 3d 153–54.

The Court also resolved Count 19 in Defendants' favor. *Id.* at 158. Count 19 alleged that Plaintiff's First Amendment rights were violated when LTS Casteuble issued a reprimand letter about his statements at the December 2011 French language section meeting. *See* Compl. ¶¶ 194–96. The Court granted Defendants' motion for summary judgment, concluding that Dr. Coulibaly's speech at the meeting was not entitled to First Amendment protection because (1) "it did not address 'systematic or global discrimination,'" and (2) Dr. Coulibaly had spoken "in the context of performing his official employment duties, and not as a citizen." *Coulibaly*, 213 F. Supp. 3d at 156.

### III. ANALYSIS

#### A. Count 5 is Dismissed as Untimely

Defendants argue that Count 5 should be dismissed as untimely because Dr. Coulibaly's claim is apparently based on events which occurred in 2007 and the applicable limitations period is three years, but Dr. Coulibaly did not initiate this action until 2014. Mot. Dismiss Count Five

---

[5] Dr. Coulibaly's allegation concerned two supervisors, LTS Fyfe and LTS Casteuble. *See* Compl. ¶¶ 178–79. But Dr. Coulibaly acknowledged that FSI did eventually remove LTS Fyfe as his supervisor. *Id.* ¶ 179. Accordingly, the Court (implicitly) construed Count 18 as centering only on FSI's purported refusal to accommodate Dr. Coulibaly by removing him from LTS Casteuble's charge.

at 4–5. For his part, Dr. Coulibaly seems to (rightly) agree that a three-year limitation period applies to his claim. *See* Pl.'s Resp. at 17 (noting "the statute of limitation of three years to file the case"); *see also Loumiet v. United States*, 828 F.3d 935, 947 (D.C. Cir. 2016) (approving application of the District of Columbia's general three-year statute of limitations to *Bivens* claims). Furthermore, he has not disputed Defendants'—and this Court's—characterization of Count 5 as alleging that "FSI did not hire him *in 2007* because of his protected First Amendment speech." Mot. Dismiss Count Five at 5 (emphasis added) (quoting *Coulibaly*, 213 F. Supp. 3d at 154); *see also* Compl. ¶ 39 ("There is no dispute on this official evidence of failure to hire Plaintiff on June 15, 2007."). However, Dr. Coulibaly argues that the limitation period "should start running from April 22, 2013" (the day he discovered the signed French instructor position description which featured his name) "and not June 15, 2007" (the day FSI failed to hire him). Pl.'s Resp. at 17. Accordingly, he asserts that his claim was timely filed.

"In ruling on a Rule 12(b)(6) motion grounded in a statute of limitations defense, a court must accept the well-pleaded allegations in the complaint as true and determine whether the plaintiff has plausibly alleged a claim that is not time-barred." *Wash. Metro. Area Transit Auth. v. Ark Union Station, Inc.*, --- F. Supp. 3d ----, 2017 WL 3328151, at *5 (D.D.C. Aug. 3, 2017). "[D]ismissal is appropriate only if the complaint on its face is conclusively time-barred." *Billups v. Lab. Corp. of America*, 233 F. Supp. 3d 20, 23 (D.D.C. 2017) (alteration in original) (quoting *Rudder v. Williams*, 47 F. Supp. 3d 47, 50 (D.D.C. 2014)). Under the "standard rule," "the limitations period commences when the plaintiff has 'a complete and present cause of action.'" *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)). Stated differently, the clock typically

begins to run when "a defendant has taken the final step that makes its conduct legally actionable." *Sheikh v. Republic of Sudan*, 172 F. Supp. 3d 124, 128 (D.D.C. 2016). In limited circumstances, this Court applies the so-called "discovery rule," under which the statute of limitation does not start to run until "the plaintiff discovers, or with due diligence should have discovered, the injury supporting the legal claim." *Lattisaw v. District of Columbia*, 118 F. Supp. 3d 142, 157 (D.D.C. 2015) (quoting *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 729 (D.C. Cir. 2012)).

No matter which of these two accrual rules applies to Count 5, Dr. Coulibaly's claim is plainly time-barred. Under the standard rule, his First Amendment retaliation claim accrued when he could assert "(1) that he engaged in protected conduct, (2) that the government 'took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again;' and (3) that there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against him.'" *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015) (quoting *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011)). As Dr. Coulibaly does not dispute, all of the events which gave rise to this claim—Dr. Coulibaly's interactions with media concerning political events in the Ivory Coast, FSI's failure to hire him, and his conversations with members of FSI's upper management which suggested a connection between his political speech and the failure to hire him—occurred in or before 2007. Under the standard rule, Dr. Couliably's claim is untimely by several years.

But even assuming that the more-lenient discovery rule applies to Count 5,[6] Dr. Coulibaly's claim is still untimely. Under the discovery rule, Dr. Coulibaly's claim accrued when he discovered or should have discovered that FSI had injured him—namely, by failing to hire him because of his political speech. Dr. Coulibaly's complaint establishes that he knew long before April 2013 that he had been bypassed for "several" direct-hire positions, including one available in 2007 and another available in July 2009. *See* Compl. ¶¶ 55, 125 (mentioning specific direct-hire positions to which FSI had declined to promote him). Indeed, Dr. Coulibaly recounts that he repeatedly "complained" in 2009 that he had not yet been appointed to a direct hire-position despite his purported seniority. Compl. ¶ 125. The later discovery of the signed French instructor position description did not constitute discovery of an injury. "[I]t is awareness of the harm itself—and not a plaintiff's full appreciation of the impact of the injury—that matters for purposes of the discovery rule." *Lattisaw*, 118 F. Supp. 3d at 157. At most, the position description offered what Plaintiff believes is concrete evidence to support his contention that Associate Dean North had been preparing to hire him in June 2007—a fact already known to Dr. Coulibaly in 2007, according to his own complaint. The Court dismisses Count 5 as time-barred.[7]

### B. Plaintiff's Motion for Reconsideration of Counts 18 and 19 is Denied

Dr. Couliably asks this Court to reconsider its dismissal of his disability discrimination claim (Count 18) and its entry of summary judgment to Defendants' on one of his First

---

[6] The discovery rule is "usually reserved for tort cases that involve injuries that are difficult to discover." *Lattisaw*, 118 F. Supp. 3d at 157. Dr. Coulibaly has cited no authority to support his contention that it is applicable to Count 5.

[7] Because the Court resolves Count 5 on untimeliness grounds, it declines to address Defendants' other arguments for dismissal.

Amendment claims (Count 19). Federal Rule 54(b) permits a district court to reconsider and revise its own rulings prior to final judgment. Fed. R. Civ. P. 54(b). Although a district court is imbued with "broad discretion" to entertain a Rule 54(b) motion, the court's and the parties' shared interest in judicial economy counsels against repeated consideration of matters already thoughtfully decided once. *See Lyles v. District of Columbia*, 65 F. Supp. 3d 181, 188 (D.D.C. 2014) ("The district court's discretion is 'limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005))). Furthermore, "it is well-established that 'motions for reconsideration,' whatever their procedural basis, cannot be used an 'an opportunity to reargue facts and theories upon which a count has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *Estate of Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting *Secs. & Exch. Comm'n v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)).

This Court will grant a Rule 54(b) motion "as justice requires." *Lyles*, 65 F. Supp. 3d at 188. The standard is flexible, and a host of considerations—for example, whether the court "'patently' misunderstood the parties" or "made a decision beyond the adversarial issues presented"—inform the inquiry. *Id.* (quoting *Williams v. Johanns*, 555 F. Supp. 2d 162, 164 (D.D.C. 2008)). Typically, the moving party must demonstrate "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order" to justify reconsideration. *Id.* (quoting *Stewart v. Panetta*, 826 F. Supp. 2d 176, 177 (D.D.C. 2011)). The movant also "bears the burden of proving that some harm would

accompany a denial of the motion to reconsider . . . [and] that some sort of injustice will result if reconsideration is refused." *Id*. (alterations in original) (quoting *Isse v. Am. Univ.*, 544 F. Supp. 2d 25, 29 (D.D.C. 2008)).

### 1. Rehabilitation Act Claim

Dr. Coulibaly argues that Defendants "misle[d]" this Court into thinking that he had not exhausted his administrative remedies before he brought his failure-to-accommodate claim. Pl.'s Resp. at 5. He seeks reconsideration, contending that he "timely and fully exhausted his administrative remedies" by contacting an EEO manager regarding his request for a new supervisor "many times by email and phone." *Id*. at 5; *see also* Email from Tiemoko Coulibaly to Eloisa Done (Mar. 21, 2012), Pl.'s Resp. at 26, ECF No. 58. He highlights a letter sent by his doctor to FSI's upper management, which states "[i]t is not recommended for Mr. Coulibaly to attempt to function under the same supervisor [as] [t]he potential for an exacerbation of his symptoms in that situation would be very high." Letter from Willie Hamlin to Catherine Russell at 2, Pl.'s Resp. at 40. He also references a letter from an EEO attorney denying his request to "amend [his] [earlier] complaint to include an additional allegation of retaliation." EEO Letter (Apr. 25, 2012), Pl.'s Resp. at 29, ECF No. 58.

Dr. Coulibaly has not met his burden of showing that reconsideration is warranted. He points to no change in the law, no patent misunderstanding of either parties' arguments, and no discovery of previously unavailable evidence that might justify reexamination of his claim. Furthermore, even if this Court were to reconsider its ruling on Count 18, the evidence on record

does not show that Dr. Coulibaly timely requested EEO counseling within 45 days of the (allegedly improper) denial of his requested accommodation.

Under the Rehabilitation Act, a discriminatory act occurs on "the date the [employer] failed to provide the [employee] with a reasonable accommodation for h[is] disability." *Owens–Hart v. Howard Univ.*, 220 F. Supp. 3d 81, 91 (D.D.C. 2016). To preserve the opportunity to pursue other remedies, an employee must "initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory" to begin pre-complaint, informal counseling. 29 C.F.R. § 1614.105(a)(1). The evidence on record shows, at most, that Dr. Coulibaly asked EEO manager Done for assistance in securing a change in supervisor to "avoid further illegal retaliations which would damage my fragile health condition." Pl.'s Resp. at 26–27. This constitutes a request for an equitable remedy to his alleged ongoing discrimination/retaliation about which he had previously complained; it does not constitute a report to an EEO Counselor that FSI had denied Dr. Coulibaly's accommodation request or had refused to discuss alternative accommodations. Indeed, Dr. Coulibaly's own email reveals that he had only recently contacted FSI Director Catherine Russell concerning his request and he had not yet received a response— let alone a denial of the request—from her. Likewise, Dr. Coulibaly's letter from an EEO attorney denying his request to amend his complaint does not show that he had timely complained to an EEO manager regarding disability discrimination. The letter references "additional allegations of retaliation," not Dr. Coulibaly's brand new claims concerning his recently documented health issues. Pl.'s Resp. at 29. In sum, the Court did not clearly err in concluding that Dr. Coulibaly had not timely exhausted his administrative remedies.

### 2. First Amendment Claim Concerning 2011 Events

Dr. Couliably also requests that the Court reconsider its entry of summary judgment for Defendants on Count 19. Pl.'s Resp. at 21–23. Specifically, he asserts that he "respectfully believes that his 2011 speech addresse[d] 'systematic or global discrimination,'" and he asks this Court to revisit its contrary conclusion. *Id.* As with his Rehabilitation Act claim, Dr. Coulibaly has articulated no legal basis to justify reconsideration. Perhaps more significantly, he has not asked the Court to reconsider its determination that he had spoken as an employee, and not as a citizen, during the 2011 meeting. *See* Pl.'s Resp. at 22–23 ("Plaintiff does not know if he was speaking as a 'citizen' or as an 'employee.'"). Because that ruling alone is sufficient to warrant entry of summary judgment for Defendants, the Court agrees with Defendants that Dr. Coulibaly has not demonstrated that harm might flow from refusal to reconsider this one aspect of the prior ruling. Accordingly, Dr. Coulibaly's request for reconsideration is denied.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Count 5 is **GRANTED** and Dr. Coulibaly's motion for reconsideration is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: October 5, 2017                               RUDOLPH CONTRERAS
                                                      United States District Judge